UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNOR HURLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, et al.,<br><br>Defendants. | Case No.  25-cv-00883-JD<br><br>**ORDER RE MOTION TO DISMISS** |

This is an antitrust action against Google LLC brought by plaintiff Connor Hurley, who is a resident of Port Moody, British Columbia, Canada.[1]  Hurley is an Android mobile app consumer who bought a number of apps and in-app content through the Google Play Store.  Dkt. No. 35 ¶ 33.  On behalf of himself and a putative class of Canadian residents, he alleges that Google engaged in anticompetitive practices in connection with the distribution of Android apps.

The case may sound familiar because it is a thematic copycat of the lawsuit brought by Epic Games, which resulted in a jury verdict against Google for anticompetitive conduct. Hurley's complaint repeats, practically verbatim, the allegations that were made against Google in the multi-district litigation, *In re Google Play Store Antitrust Litigation*, MDL No. 2981, which were litigated in member case *Epic Games, Inc. v. Google LLC*, Case No. 20-cv-05671-JD.  As in those actions, Hurley's claims are brought under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, as well as California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 et seq., and Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq.  Dkt. No. 35 ¶¶ 226-314.

---

[1] Google Payment Corp. is also named as a defendant.  Dkt. No. 35 ¶ 35.  The Court will refer to both Google entities together as "Google."

Google asks to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that Hurley's claims are barred by the Foreign Trade Antitrust Improvements Act (FTAIA), 15 U.S.C. § 6a, because his complaint alleges "exclusively foreign injury suffered exclusively in a foreign geographic market." Dkt. No. 38 at 1. The parties' familiarity with the facts is assumed, and the case is dismissed.

## DISCUSSION

The FTAIA is a statute that "limits the extraterritorial reach" of the Sherman Act. *In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, 2016 WL 5724960, at *2 (N.D. Cal. Sept. 30, 2016). It "seeks to make clear to American exporters (and to firms doing business abroad) that the Sherman Act does not prevent them from entering into business arrangements (say, joint-selling arrangements), however anticompetitive, as long as those arrangements adversely affect only foreign markets." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004) (citations omitted). "It does so by removing from the Sherman Act's reach, (1) export activities and (2) other commercial activities taking place abroad, *unless* those activities adversely affect domestic commerce, imports to the United States, or exporting activities of one engaged in such activities within the United States." *Id.* (emphasis in original).

In the plain language of the statute:

> Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless --
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect --
>
>   (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>
>   (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>
> (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.
>
> If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of this title

2

shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a.

Hurley does not contest that the transactions in this case are "trade or commerce (other than import trade or import commerce) with foreign nations" that are not within the scope of the Sherman Act unless excepted by the FTAIA. *See* Dkt. No. 40. This is for good reason. The transactions in play are purchases by Canadian residents through Google Play Store's Canadian storefront. *See* Dkt. No. 35 ¶ 71 ("app stores frequently have country-specific 'storefronts,' and Canadian consumers cannot access the storefront available to users in another country."). The purchases of apps that have been tailored to the Canadian market, by Canadian purchasers through a Canadian storefront, are exactly the types of transactions that raise important concerns of comity which inform the FTAIA analysis.

The United States Supreme Court has underscored the importance of comity, which commands that our federal courts "avoid unreasonable interference with the sovereign authority of other nations." *Empagran*, 542 U.S. at 164. To that end, the Court has concluded that the projection of American antitrust laws to foreign conduct that causes independent foreign harm "creates a serious risk of interference with a foreign nation's ability independently to regulate its own commercial affairs." *Id*. at 165. Our circuit has also emphasized that the FTAIA "clarifies that U.S. antitrust laws concern the protection of '*American* consumers and *American* exporters, not foreign consumers or producers.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 986 (9th Cir. 2008) (emphasis in original; citation omitted).

Hurley says that his claims come within the scope of the Sherman Act and are not barred by the FTAIA because he has satisfied the FTAIA's domestic effects exception. *See* Dkt. No. 40. The "domestic effects" (or "domestic injury") exception makes the Sherman Act applicable "if foreign conduct (1) has a direct, substantial, and reasonably foreseeable effect on domestic commerce, and (2) such effect gives rise to a Sherman Act claim." *DRAM*, 546 F.3d at 985 (cleaned up); *see* 15 U.S.C. §§ 6a(1)(A) & (2). Hurley says the "domestic effects of Google's unlawful behavior" are "higher prices in the United States" (*i.e.*, the "supra-competitive commissions" on app sales and sales of in-app content that Google imposed), and "[t]hese higher

3

prices then proximately caused harm to Canadian class members because those same app developers had to adjust their prices, effectively taxing Plaintiff and the class, as a result of these domestic effects." Dkt. No. 40 at 2.

This theory is not well taken. The recent discussion of the FTAIA in *Seagate Technology LLC v. NHK Spring Co., Ltd.*, 163 F.4th 1272 (9th Cir. 2026), explains why.[2] Our circuit reiterated that the domestic effects exception has two requirements: the anti-competitive conduct must "(1) ha[ve] a 'direct, substantial, and reasonably foreseeable effect' on certain U.S.-based commerce, and (2) *that effect* [must] 'give[] rise to' an antitrust claim." *Seagate*, 163 F.4th at 1283 (emphasis in original; citing 15 U.S.C. § 6a). These requirements are "strict by design," and "[t]hey require a tight causal link between the defendant's anticompetitive conduct, the effect on U.S. commerce, and the ultimate antitrust injury." *Id*. at 1284. "But for" causation does not suffice, "such as where intervening forces may have caused the ultimate antitrust jury." *Id*. (citations omitted).

Accepting for present purposes that plaintiff has satisfied the first prong of showing that Google's conduct "caused an immediate harm to U.S. domestic commerce," *id*., Hurley did not satisfy the second prong of the domestic effects exception, namely that his Sherman Act claims were proximately caused by those domestic effects. Hurley says that "[d]evelopers (including the large number of U.S. developers that sell to Canadian consumers) must adjust their app and in-app purchase pricing to account for Google's supra-competitive commission." Dkt. No. 40 at 4. But Hurley did not contend that the developers "adjusted" their prices in any inevitable way. Rather, the developers are said to have "passed on" the supra-competitive commission to consumers "in a proportion calculable by a well-understood economic model." *Id*. at 8. Hurley expressly acknowledged that the upshot is that the consumer may end up sharing the economic burden of the supra-competitive commission "*in whole or in part*." *Id*. at 10 (emphasis added).

---

[2] Plaintiff filed a notice of supplemental authority bringing this case to the Court's attention. Dkt. No. 46. Google's proposed response to that notice and plaintiff's proposed reply are accepted. Dkt. Nos. 47-1, 48.

4

United States District Court
Northern District of California

These alleged circumstances are in stark contrast to those in *Seagate*. The domestic effect there was that "NHK's actions had a direct, substantial, and reasonably foreseeable effect on domestic commerce by fixing prices of suspension assemblies sold here" in the United States. *Seagate*, 163 F.4th at 1285. Seagate's next task was to "show that the harm of NHK's conduct on U.S. domestic commerce directly caused Seagate Thailand's and Seagate Singapore's respective overcharge claims." *Id*. Seagate's proximate cause theory was found sufficient where it had provided evidence that "its foreign subsidiaries lacked any authority over the price, quantity, or timing of their orders," and so "there only was *one* price, the U.S. and foreign prices being 'one and the same.'" *Id*. at 1286 (emphasis in original). In effect, Seagate's claim was "rooted in the certainty of binding pricing contracts," as Seagate's foreign entities had to accept the higher U.S. prices "as a matter of company policy and contractual requirements." *Id*. at 1286-87. Consequently, Seagate was found to have adequately explained how the domestic effect (higher U.S. prices) "also directly caused an antitrust injury abroad." *Id*. at 1276-77.

Not so here. The prices charged to Hurley were not "one and the same" as the prices charged to the U.S. developers. Instead, as Hurley recognizes, the developers had the discretion to decide how the commissions they were charged by Google would impact the prices the developers in turn set for consumers such as Hurley. Some developers may have decided to pass on the cost of the supra-competitive commission in full, while others may have decided to pass it on in part, while still others may have decided not to pass it on at all, for their own independent business reasons. "Other actors or forces may have affected the foreign prices." *DRAM*, 546 F.3d at 988. In that situation, the argument that the U.S. prices "were the source of, and substantially affected" the price that Canadian consumers paid, "alleges no more than . . . 'but for' causation" which "does not suffice." *Id*. at 989. In sum, Hurley's complaint "suggests that super-competitive [app and in-app content] prices in the United States may have facilitated" higher app and in-app prices charged to consumers by developers in Canada, but "it does not sufficiently allege a theory that the higher U.S. prices proximately caused [Hurley's] foreign injury of having to pay higher prices outside the United States." *Id*.

United States District Court
Northern District of California

Some additional observations bear mention.  Hurley says that "Google has contracted with Plaintiff to litigate any claims by Canadians in U.S. courts under U.S. law" under its Terms of Service.  Dkt. No. 40 at 1.  But a mere contractual term does not expand the reach of the United States' laws beyond the mandates of Congress.  The territorial boundaries of the Sherman Act were set by Congress, and Google's Terms of Service have no power to move those boundaries.  Hurley's suggestion that dismissal "would effectively leave Canadians without a remedy," *id*., is not pertinent to the question of whether Hurley's claims fall within the scope of the Sherman Act.  In addition, whether a court in Canada would enforce the forum clause in Google's Terms of Service is for a Canadian court to answer, and will undoubtedly depend on what claims Hurley chooses to press in Canada.

For reasons the Court has stated in other cases, the Court finds that Hurley's California state law claims cannot extend beyond the reach of the FTAIA, either.  *See In re Capacitors*, 2016 WL 5724960, at \*7-8.  Consequently, Hurley's Cartwright Act and UCL claims are also dismissed.

Overall, this case concerns Canadian consumers purchasing products in Canada.  Hurley has not demonstrated that the antitrust laws of the United States have any application to conduct within the sovereign state of Canada.  Hurley has already amended his complaint once as of right, and he has not requested another opportunity to amend.  *See* Dkt. Nos. 35, 40.  The issues discussed above highlight structural defects in his complaint that Hurley cannot plead around.  A further opportunity to amend is not warranted.

## CONCLUSION

Hurley's amended complaint is dismissed with prejudice and the case is closed.  Judgment will be entered against Hurley.

**IT IS SO ORDERED.**

Dated:  March 17, 2026

_____
JAMES DONATO
United States District Judge

6